FILED
DEBBIE HARP KNOTH, CLERK

JUN 1.4 2012

LIVINGSTON CIRCUIT/DISTRICT COURT
BY: _____ L.A.T. _____ D.C.

## COMMONWEALTH OF KENTUCKY
## IN THE CIRCUIT COURT OF LIVINGSTON COUNTY
## DIVISION _____

### Civil Action File No. 12-CI- 00092

Marie O' Brien, Administratrix of the Estate of                          **PLAINTIFF**
Helen Tabor, deceased, and on behalf
of the Wrongful Death Beneficiaries of Helen Tabor


v.                                    **COMPLAINT**


Atrium Centers Management, LLC                                    **DEFENDANTS**
f/k/a Atrium Centers, LLC;
c/o CT Corporation System
306 W. Main Street
Frankfort, KY 40601


Orion Salem, LLC
a/k/a Salem Springlake Health & Rehabilitation Center
c/o S&H Louisville, LLC
400 West Market Street
Suite 1800
Louisville, KY 40202


Robert Briley, in his capacity as Administrator
of Salem Springlake Health & Rehabilitation Center
509 North Hayden Avenue
Salem, KY 42078


and John Does 1 through 5,
Unknown Defendants
(as to Salem Springlake Health & Rehabilitation Center)

COMES NOW Plaintiff, Marie O'Brien, Administratrix of the Estate of

Helen Tabor, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen

Tabor, and for her cause of action against Atrium Centers Management, LLC, Orion

Salem, LLC, and, Robert Briley, in his capacity as Administrator of Salem Springlake

Health & Rehabilitation Center; and John Does 1 through 5, Unknown Defendants, and

states:

1

1.      Marie O'Brien is the Administratrix of the Estate of Helen Tabor, deceased, as well as the daughter of Helen Tabor, and therefore brings this action on behalf of the estate and wrongful death beneficiaries of Helen Tabor, deceased, pursuant to the Survival of Actions Statute (K.R.S. § 411.140) and the Wrongful Death Statute (K.R.S. § 411.130).  *See* Order Appointing Administrator, attached as Exhibit A.

2.      The Estate of Helen Tabor was opened in Livingston District Court in Livingston, County, Kentucky.  *See* Exhibit A.

3.      Upon information and belief, Helen Tabor was a resident of Salem Springlake Health & Rehabilitation Center, 509 North Hayden Avenue, Salem, Livingston County, KY 42078, from on or about February 22, 2010 until April 22, 2011 and died on June 30, 2011.

4.      At all times relevant to this action, Helen Tabor was of unsound mind and remained of unsound mind until her death.

5.      Defendant Atrium Centers Management, LLC, f/k/a Atrium Centers, LLC is a foreign limited liability company that is authorized to do business in the Commonwealth of Kentucky, whose principal office is 2 Eastern Oval Drive, Suite 210, Columbus, Ohio 43219, and is engaged in the business of custodial care of elderly and infirmed nursing home residents in nursing facilities.  At all times material to this action, Defendant Atrium Centers Management, LLC owned, operated, managed and/or controlled nursing facilities, including Salem Springlake Health & Rehabilitation Center.  The registered agent for service of process of Defendant Atrium Centers Management, LLC is CT Corporation System, 306 W. Main Street, Frankfort, Kentucky 40601.

6.      Defendant Orion Salem, LLC is a foreign limited liability company that is

authorized to do business in the Commonwealth of Kentucky, whose principal office is 2 Eastern Oval Drive, Suite 210, Columbus, Ohio 43219, and is engaged in the business of custodial care of elderly and infirmed nursing home residents in nursing facilities. At all times material to this action, Defendant Atrium Centers Management, LLC owned, operated, managed and/or controlled nursing facilities, including Salem Springlake Health & Rehabilitation Center. The registered agent for service of process of Defendant Atrium Centers Management, LLC is S&H Louisville LLC, 400 West Market Street, Suite 1800, Louisville, Kentucky 40202.

7.     Upon information and belief, Defendant Robert Briley was an Administrator of Salem Springlake Health & Rehabilitation Center during the residency of Helen Tabor. Robert Briley may be served with service of process at Salem Springlake Health and Rehabilitation Center, 509 North Hayden Avenue, Salem, Livingston County, KY 42078.

8.     Defendants John Does 1 through 5 are entities and/or persons, either providing care and services to Helen Tabor, or directly or vicariously liable for the injuries of Helen Tabor.  Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation. Said Defendants are named insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to the care, treatment and services to Helen Tabor during her residency at Salem Springlake Health & Rehabilitation Center.

9.     Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

10.    Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to and includes Atrium Centers Management, LLC, Orion Salem, LLC.

11.    Whenever the term "Administrator Defendant" is utilized within this suit, such term refers to Robert Briley.

12.    Nursing Home Defendants controlled the operation, planning, management, budget and quality control of Salem Springlake Health & Rehabilitation Center.  The authority exercised by Nursing Home Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by the nursing facilities in Kentucky, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Nursing Home Defendants.

13.    Jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

14.    Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

15.    Upon information and belief, Helen Tabor was looking to Nursing Home Defendants for treatment of her total needs for custodial, nursing and medical care and not merely as the situs where others not associated with the facility would treat him.

16.    At all relevant times mentioned herein, Nursing Home Defendants owned, operated, managed and/or controlled Salem Springlake Health & Rehabilitation Center,

4

either directly, through a joint venture, enterprise, partnership and/or through the agency of each other and/or other diverse subalterns, subsidiaries, governing bodies, agents, servants or employees.

17.     Nursing Home Defendants are directly or vicariously liable for any acts and omissions by any person or entity, controlled directly or indirectly, including any governing body, officer, employee, ostensible or apparent agent, partner, consultant or independent contractor, whether in-house or outside individuals, entities, agencies or pools.

18.     Due to the wrongful conduct of Nursing Home Defendants, Helen Tabor suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, as well as the following injuries:

    a.      Falls;

    b.      Fractures;

    c.      DVT;

    d.      Infections; and

    e.      Death.

19.     Helen Tabor also suffered unnecessary loss of personal dignity, pain and suffering, degradation, emotional distress and hospitalizations, all of which were caused by the wrongful conduct of Defendants as alleged below.

## CAUSES OF ACTION AGAINST NURSING HOME DEFENDANTS
## NEGLIGENCE

20.     Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

21.    Nursing Home Defendants owed a non-delegable duty to Helen Tabor to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

22.    Upon information and belief, Nursing Home Defendants knowingly developed and maintained staffing levels at Salem Springlake Health & Rehabilitation Center in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Helen Tabor.

23.    Nursing Home Defendants negligently failed to deliver care, services and supervision, including, but not limited to, the following acts and omissions:

a.    The failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

   i)    ensuring that the rules and regulations designed to protect the health and safety of the residents, such as Helen Tabor, as promulgated by the Cabinet for Health Services, Division of Long Term Care;

   ii)   ensuring compliance with the resident care policies for the facility; and

   iii)  ensuring that appropriate corrective measures were    implemented to correct problems concerning inadequate resident care.

b.    The failure to provide the minimum number of qualified personnel to meet the total needs of Helen Tabor;

c.    The failure to provide adequate supervision and assistance to prevent accidents;

d.    Failure to provide Helen Tabor with adequate amounts of fluid to prevent dehydration;

e.    The failure to ensure that Helen Tabor received adequate assessment of her nutritional needs to prevent weight loss and malnutrition;

f.    Failure to take other necessary and reasonable custodial measures to prevent the onset and progression of pressure sores during her residency;

g.    The failure to provide a nursing and other staff that was properly staffed, qualified and trained;

h.    Failure to increase the number of personnel at the facility to ensure that Helen Tabor received timely and appropriate custodial care, including, but not limited to, bathing, grooming, incontinent care, personal attention and care to her skin, feet, nails, and oral hygiene;

i.    The failure to have in place adequate guidelines, policies and procedures of the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

j.    The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility; and

k.    The failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Helen Tabor in proportion to her particular physical and mental ailments, known or discoverable by the exercise of reasonable skill and diligence.

24.    A reasonably careful nursing facility would not have failed to provide the care listed above.  It was foreseeable that these breaches of ordinary care would result in serious injuries to Helen Tabor.  With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Tabor.

25.    Pursuant to KRS 446.070, Plaintiff also alleges Nursing Home Defendants violated statutory and regulatory duties of care, the violations of which are actionable as negligence *per se*.  Helen Tabor was injured by the statutory violations of Nursing Home Defendants and was within the class of persons for whose benefit the statutes were enacted and who was intended to be protected by these statutes. The negligence *per se* of Nursing Home Defendants included, but is not limited to, violation(s) of the following:

a.    Violation(s) of KRS 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Helen Tabor;

b.    Violation(s) of KRS 530.080 et seq., endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Helen Tabor, who was unable to care for herself because of her illness; and

c.    Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

26.    As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Helen Tabor suffered the injuries described herein.  Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, and loss of life, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## MEDICAL NEGLIGENCE

27.    Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

28.    Nursing Home Defendants had a duty to provide the standard of professional medical care and services of reasonably competent nursing facility acting under the same and similar circumstances.

29.    Nursing Home Defendants failed to meet applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendants included, but was not limited to, the following acts and omissions:

a.     The overall failure to ensure that Helen Tabor received the following:

  i)     timely and accurate care assessments;

  ii)    prescribed treatment, medication and diet;

  iii)   necessary supervision; and

  iv)    timely nursing and medical intervention due to a significant change in condition;

b.     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Helen Tabor throughout her residency;

c.     Failure to provide and implement an adequate nursing care plan based on the needs of Helen Tabor;

d.     Failure to provide proper treatment and assessment to Helen Tabor in order to prevent infections;

e.     Failure to assess the risk and prevent, treat or heal the development or worsening of pressure ulcers;

f.     Failure to ensure that Helen Tabor received adequate and proper nutrition, fluids, supervision, medication and skin care;

g.     Failure to provide Helen Tabor with adequate sanitary care;

h.     Failure to provide care, treatment and medication in accordance with physician's orders;

i.     Failure to adequately and appropriately monitor Helen Tabor and recognize significant changes in her health status, and to timely notify her physician of significant changes in her health status;

j.     Nursing Home Defendants were responsible for the infliction of physical pain, injury, and mental anguish upon Helen Tabor; and

k.     Failure to ensure Helen Tabor was not deprived of the services necessary to maintain her health and welfare.

30.     It was foreseeable that the breaches of care listed above would result in serious injuries to Helen Tabor.  A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

31.     With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Tabor.

32.     As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Helen Tabor suffered the injuries described herein.  Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, and loss of life, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## CORPORATE NEGLIGENCE

33.     Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

34.     Upon information and belief, Helen Tabor was looking to Nursing Home Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems.  There is a presumption that the treatment Helen Tabor received was being rendered through employees of Nursing Home Defendants and that any negligence associated with that treatment would render Nursing Home Defendants responsible.  Nursing Home Defendants or persons or entities under their control, or to the extent Nursing Home

Defendants were vicariously liable through the ostensible or apparent agency of others,
owed a non-delegable duty to residents, including Helen Tabor, to use the degree and
skill which is expected of reasonably competent medical practitioners acting in the
same or similar circumstances.

35.    Nursing Home Defendants owed a non-delegable duty to assist Helen Tabor in
attaining and maintaining the highest level of physical, mental and psychological well-
being and to promote her cure.

36.    Nursing Home Defendants owed a duty to Helen Tabor to maintain their facilities;
including providing and maintaining medical equipment and supplies; and hiring,
supervising and retaining nurses and other staff employees.

37.    Nursing Home Defendants owed a duty to Helen Tabor to have in place
procedures and protocols that properly care for residents and to administer these
policies through enforcement of any rules, regulations, by-laws or guidelines, which
were adopted by Nursing Home Defendants to insure smoothly run facilities and
adequate resident care.

38.    Nursing Home Defendants owed a duty to Helen Tabor to provide a safe
environment, treatment and recovery, and to exercise ordinary care and attention for
the safety of residents in proportion to the physical and mental ailments of each
particular resident, known or discoverable by the exercise of reasonable skill and
diligence.  The duty of reasonable care and attention extended to safeguarding Helen
Tabor from danger due to her mental incapacity to care for herself.  Nursing Home
Defendants had a duty to protect Helen Tabor from any danger which the surroundings
would indicate might befall her in view of any peculiar trait exhibited by her or which her

mental condition or aberration would suggest as likely to happen.

39.     The negligence of the Nursing Home Defendants, their employees, agents and consultants, includes, but is not limited to, one or more of the following acts and omissions:

a.     Staffing

i)     Nursing home residents, including Helen Tabor, often are unable to care for themselves; thus, they rely on nursing home staff to provide many, if not all, of their activities of daily living (ADL's). Nursing facilities have a common law duty, as well as a statutory duty, to have sufficient nursing staff to provide for the needs of their residents.

ii)     The Nursing Home Defendants are responsible and required to provide sufficient resources to hire and maintain sufficient staff to ensure that these residents' needs are met.

iii)     Additionally, when the Nursing Home Defendants fail to provide sufficient resources to hire and maintain sufficient staff, the staff who are present are unable to meet the total needs of the residents through no fault of their own.

iv)     When the Nursing Home Defendants fail to provide sufficient resources to hire and maintain sufficient staff, those who are present must take shortcuts with respect to all aspects of their job and are unable to do their job.

v)     Rather than hiring and maintaining sufficient staff, Nursing Home Defendants hired too few registered nurses, too few LPNs, and too few certified nursing assistants. More importantly, too many of these staff members skipped work or terminated their employment because they did not have enough co-workers to properly care for the residents who depended upon them, or because of deplorable working conditions, or because the pay set by these Nursing Home Defendants was too low, or such other reasons as will be proven at trial of this matter.

b.     Separate Defendants failed to implement adequate guidelines, policies and procedures for:

i)     Investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at Salem Springlake Health & Rehabilitation Center by any state or federal survey agency;

ii)     Determining the cause of any such deficiencies, violations or penalties; and

iii)    Correcting deficiencies or licensure violations or penalties found to exist at Salem Springlake Health & Rehabilitation Center;

iv)    Notifying residents affected by and those potentially affected by deficiencies cited by any state or federal survey agency.

c.     Adopting adequate guidelines, policies, and procedures for determining whether Salem Springlake Health & Rehabilitation Center had sufficient numbers of nursing personnel to:

i)     Provide 24-hour compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations;

ii)    To correct and address any and all failures to comply with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations.

d.     Nursing Home Defendants failed to adopt adequate guidelines, polices, and procedures of Salem Springlake Health & Rehabilitation Center for documenting; maintaining files; investigating and responding to any complaint regarding compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations by employees at Salem Springlake Health & Rehabilitation Center regardless of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person. This failure resulted in injury, abuse and neglect to residents of the facility, including Helen Tabor.

e.     Budgeting or Allocation of Resources

i)     Nursing Home Defendants were responsible for providing accurate information regarding the monetary needs of the facility so that a workable budget could be set.

ii)    Nursing Home Defendants were required to administer Salem Springlake Health & Rehabilitation Center in a manner that enabled it to use resources effectively and efficiently to comply with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations.

iii)   Nursing Home Defendants were responsible for allocating funds within the budget in a manner that ensured that compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations.

iv)     Nursing Home Defendants failed to properly allocate the budgetary needs of the facility and to properly allocate the funds budgeted to the facility for compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations, resulting in the following:

    a)     Staffing levels that were insufficient to comply with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations for each residents, including Helen Tabor, and

    b)     Supplies and food were insufficient to comply with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations for each resident, including Helen Tabor.

v)      Upon information and belief, Plaintiff alleges that rather than properly allocating the budgeted funds, Nursing Home Defendants inappropriately allocated or allowed funds to be paid to management companies that did not assist or even participate in managing the care provided to the residents. Rather, Nursing Home Defendants only enhanced the profits of the home, allocated funds to employees whose only duties were non-patient oriented and to items and services that were unnecessary to achieve the proper goal of compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations.

vi)     The failure to adequately budget and allocate resources to the facility directly caused damages to Helen Tabor.

f.      Corporate Compliance and Reporting

i)      Nursing Home Defendants were responsible for ensuring that the facility complied with state and federal standards as to the residents of the home.  To that end, they were required to file various reports with regulatory entities.

ii)     Nursing Home Defendants were charged with the responsibility of reporting instances of noncompliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations that occurred at the facility.  Upon information and belief, Plaintiff alleges that their failure to properly and timely do so resulted in additional injuries to residents, including Helen Tabor.

iii)    Upon information and belief, Plaintiff alleges that Nursing Home Defendants failed to properly recognize and report instances of non-compliance occurring at Salem Springlake Health & Rehabilitation Center, and further failed to correct those instances. These failures to report

14

resulted in the appearance of a facility that was properly managed and maintained. This false and misleading appearance induced the family of Helen Tabor to place her in the facility and misled them as to the facility's compliance with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations. Further, upon information and belief, Plaintiff alleges that because certain problems were not reported or were under-reported, the facility escaped inspections and investigations by regulatory agencies and even in-house reviews that might have corrected the deficiencies. These deficiencies that the facility experienced created a more dangerous environment in which additional injuries could occur to residents, including Helen Tabor.

iv)     Nursing Home Defendants were responsible for ensuring that no claims for reimbursement were submitted to the federal or state governments for services that were not provided or services provided that did not comply with all contracts, all state statutes or rules, and/or all applicable federal statutes or regulations. Upon information and belief, Nursing Home Defendants submitted inaccurate claims as a result of the various staffing issues listed above, resulting in unjust enrichment to the facility.

v)      The failure to adequately comply with and report violations of state and federal standards directly caused harm to Helen Tabor.

40.     A reasonably careful Corporation, operating under similar circumstances, would foresee that the failure to provide the appropriate oversight, management, direction, and/or control would result in poorly operated nursing homes such as Salem Springlake Health & Rehabilitation Center and devastating injuries to residents including Helen Tabor.

41.     As a direct and proximate result of the negligence of Defendants as set out above, Helen Tabor suffered injuries set out above and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright all of which required hospitalization and medical treatment, and required Helen Tabor to incur significant hospital and medical expenses.

42.     As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Helen Tabor suffered the injuries described herein. Plaintiff asserts a claim

for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, and loss of life, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS

43.    Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

44.    Nursing Home Defendants violated statutory duties owed to Helen Tabor as a resident of a long term care facility, Kentucky Revised Statutes 216.510 *et seq.* These statutory duties were non-delegable.

45.    The violations of the resident's rights of Helen Tabor include:

a.    Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality;

b.    Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

c.    Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs;

d.    Violation of the right to be free from abuse and neglect; and

e.    Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of K.R.S. Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

46.    As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to K.R.S. § 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, as well as costs

and attorney's fees.

47.    With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Tabor and, pursuant to K.R.S. § 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, as well as costs and attorney's fees.

## WRONGFUL DEATH

48.    Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

49.    As a direct and proximate result of the previously alleged conduct, all of which was grossly negligent, or was oppressive, fraudulent, or malicious, Defendants caused the death of Helen Tabor by their wrongful conduct.

50.    Helen Tabor suffered personal injuries, including excruciating pain and suffering, mental anguish, and emotional distress, resulting in her death.  The pain, disfigurement and loss of dignity suffered by Helen Tabor caused her family to suffer more than normal grief upon her death.

51.    As a direct and proximate result of such the wrongful death suffered by Helen Tabor, Plaintiffs assert a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, funeral expenses and other related costs, pain and suffering, mental anguish, disability, the grief suffered by statutory beneficiaries, and loss of life in an amount to be determined by the jury, plus costs and all other relief to which Plaintiffs are entitled by law.

### CAUSE OF ACTION AGAINST ROBERT BRILEY, IN HIS CAPACITY AS ADMINISTRATOR OF SALEM SPRINGLAKE HEALTH & REHABILITATION CENTER NEGLIGENCE

52.    Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

53.    Upon information and belief Robert Briley was an Administrator of Salem Springlake Health & Rehabilitation Center during Helen Tabor's residency.

54.    As a nursing home administrator, required to be licensed by the State of Kentucky, Robert Briley owed ordinary duties of care to Helen Tabor, as well as professional duties and statutory duties owed to residents by licensed, nursing home administrators in this state; pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as Kentucky Revised Statutes sections 216A.010 *et seq.*

55.    As a holder of a nursing home administrator's license, Robert Briley was legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

56.    Administrator Defendant was also responsible for the total management of Salem Springlake Health & Rehabilitation Center pursuant to federal law.

57.    Administrator Defendant's management responsibilities included ensuring that Salem Springlake Health & Rehabilitation Center operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

58.    Administrator Defendant breached his duties of ordinary care and failed to operate, manage or administer Salem Springlake Health & Rehabilitation Center in

compliance with accepted professional standards and principles through acts and omissions including, but not limited to, the following:

a.      The failure to provide sufficient numbers of qualified personnel to meet the total needs of Helen Tabor throughout her residency and to ensure that Helen Tabor;

   i)      received timely and accurate care assessments;

   ii)     received prescribed treatment, medication, and diet; and

   iii)    was protected from accidental injuries by the correct use of ordered and reasonable safety measures;

b.      The failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

c.      The failure to ensure that Helen Tabor was provided with basic and necessary care and supervision;

d.      The failure to ensure that the staff provided Helen Tabor with sufficient amounts of fluids to prevent dehydration throughout her residency at the facility;

e.      The failure to ensure that Helen Tabor attained and maintained her highest level of physical, mental, and psychosocial well-being;

f.      The failure to ensure that Helen Tabor received care, treatment, and medication as prescribed or in accordance with physician's orders;

g.      The failure to ensure that Helen Tabor was treated with the dignity and respect that all nursing home residents are entitled to receive;

h.      The failure to provide a safe environment for Helen Tabor;

i.      The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at the facility;

j.      The failure to discipline or terminate employees at the facility assigned to Helen Tabor that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health Services;

k.      The failure to adopt adequate guidelines, policies, and procedures for:

   i)      Investigating the relevant facts, underlying deficiencies, or licensure

violations or penalties found to exist at the facility by the Cabinet for Health Services or any other authority;

ii)     Determining the cause of any such deficiencies, violations, or penalties;

iii)    Establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

iv)    Determining whether the facility had sufficient numbers of personnel to meet the total needs of Helen Tabor; and

v)     Documenting, maintaining files, investigating, and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person;

l.     The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment to Helen Tabor and other residents, to protect Helen Tabor's skin integrity and to prevent the worsening of pressure sores;

m.    The failure to provide adequate supervision to the nursing staff so as to ensure that Helen Tabor received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, and skin care to prevent infection, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Helen Tabor; and

n.     The failure to maintain all records on Helen Tabor in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate care plans of care and treatment.

59.     A reasonably careful nursing home administrator would not have failed to provide the care listed above.  It was foreseeable that these breaches of ordinary care would result in serious injuries to Helen Tabor.  Each of the foregoing acts of negligence on the part of Administrator Defendant was accompanied by such wanton or reckless disregard for the health and safety of Helen Tabor as to constitute gross negligence.

60.     Additionally, Administrator Defendant's failure to operate, manage or administer Salem Springlake Health & Rehabilitation Center in compliance with federal, state, and

local laws, regulations, and codes intended to protect nursing home residents, included, but was not limited to:

a.      The failure to ensure compliance with rules and regulations of the Cabinet for Health Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the federal minimum standards imposed by the United States Department of Health and Human Services;

b.      The failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health Services to provide the minimum number of staff necessary to assist Helen Tabor with her needs;

c.      The failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrator pursuant to the Nursing Home Administrator Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 *et seq.*;

d.      The failure to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Helen Tabor, and in accordance with the comprehensive assessment and plan of care created at the facility;

e.      The failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Helen Tabor in accordance with the resident care plan generated at the facility;

f.      The failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Helen Tabor;

g.      The failure to ensure a nursing care plan based on Helen Tabor's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental, and psychosocial needs as identified in her comprehensive assessment, which was reviewed and revised when Helen Tabor's needs changed;

h.      The failure to notify Helen Tabor's family and physician of a need to alter her treatment significantly;

i.      The failure to provide a safe environment;

j.      The failure to ensure that Helen Tabor maintained acceptable parameters of nutritional status and received a therapeutic diet throughout her residency.

61.   Helen Tabor is a member of a class intended to be protected by the above laws and regulations.   The injuries alleged above resulted from events the laws and regulations were designed to prevent.

62.   It was foreseeable that these breaches of statutory duties would result in serious injuries to Helen Tabor.   Each of the foregoing acts of negligence *per se* on the part of Administrator Defendant was accompanied by such wanton or reckless disregard for the health and safety of Helen Tabor as to constitute gross negligence.

63.   As a direct and proximate result of such grossly negligent, wanton, or reckless conduct, Helen Tabor suffered the injuries described in Paragraph 19, and Plaintiff assert a claim for judgment for all compensatory and punitive damages against Administrator Defendant, in her capacity as Administrator of Salem Springlake Health & Rehabilitation Center, including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, and loss of life, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS
## DAMAGES

64.   Plaintiff incorporates all allegations contained within the complaint as if fully set forth herein.

65.   As a direct and proximate result of the negligence of Defendants as set out above, Helen Tabor suffered injuries including, but not limited to, those listed herein. As a result, Helen Tabor incurred significant medical expenses, and suffered embarrassment and physical impairment and death.

66.   Plaintiff seeks punitive and compensatory damages against Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits

of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Marie O'Brien, Administratrix of the Estate of Helen Tabor, deceased, an on behalf of the Wrongful Death beneficiaries of Helen Tabor, prays for judgment against Defendants, Atrium Centers Management, LLC, Orion Salem, LLC, Robert Briley, in his capacity as Administrator of Salem Springlake Health & Rehabilitation Center; and John Does 1 through 5, Unknown Defendants, in an amount to be determined from the evidence, the costs herein expended, and all other relief to which Plaintiff is entitled, including TRIAL BY JURY.

Respectfully submitted this ___11 th___ day of June, 2012,

Marie O' Brien, Administratrix of the Estate of Helen Tabor, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Tabor

By: _____

Jim McHugh (KY 90448)
Michael J. Fuller, Jr. (KY 93574)
Amy Quezon (KY 92224)
McHUGH FULLER LAW GROUP
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Telephone:   (601) 261-2220
Facsimile:   (601) 261-2481

Attorney for Plaintiff

**COMMONWEALTH OF KENTUCKY**
**LIVINGSTON DISTRICT COURT**

ENTERED
DEBBIE HARP KNOTH, CLERK

FEB 0 7 2012

LIVINGSTON CIRCUIT/DISTRICT COURT
BY: _DHK_ D.C.

PROBATE ACTION NO. 12-P-_00005_

IN RE:     THE ESTATE OF HELEN MAY TABOR

## ORDER APPOINTING ADMINISTRATOR/PERSONAL REPRESENTATIVE

*** *** *** ***

Upon Motion by the Estate of Helen May Tabor, and the Court being duly advised;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. All proper notice having been given and evidence taken, the Petitioner, **Marie O'Brien, 1473 Mississippi Place, Hobart, IN 46342** is hereby appointed Administrator of the Estate of Helen May Tabor and she shall be permitted to serve without bond or surety for the faithful performance of her duties herein.

**SO ORDERED** this _7th_ day of _Feb_, 2012.

_Jeff Clerk_
JUDGE, LIVINGSTON DISTRICT COURT

Tendered by:

_Thomas E. Cooper_ 1/17/2012
Thomas E. Cooper
Cooper & Cooper Law Offices
215 North Mulberry Street
Elizabethtown, KY 42701-1473
(270) 769-1410
Counsel for the Estate of Helen May Tabor

CERTIFICATION OF COURT RECORDS
I, Clerk of the Livingston Circuit/District
Court, do certify that the foregoing are true
and correct copy(s) of the original document(s)
as recorded in my office.
In testimony whereof witness my hand as Clerk
aforesaid, this the _7_ day of _Feb_
2017
_Debbie Knoth_ Clerk
BY: _____ D.C.

EXHIBIT

A